UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT MEES and NANCY LESTER MEES,<br><br>　　　　Appellants,<br><br>　　v.<br><br>J.P. MORGAN CHASE; EDUCATIONAL CREDIT MANAGEMENT CORPORATION; and FINANCIAL ASSET MANAGEMENT SYSTEMS, Inc.,<br><br>　　　　Appellees. | No.: 2:13-cv-01892-KJM<br><br>ORDER |

This matter is before the court on the appeal by debtors-appellants Robert and Nancy Lester Mees ("appellants") of the bankruptcy court's judgment declining to discharge appellants' parent loans. (ECF No. 14.) Educational Credit Management Corporation ("ECMC") has responded. (ECF No. 16.) The court held a hearing on the matter on July 1, 2014. (ECF No. 23.) At the hearing, Robert Mees appeared pro se, and Nancy Mees was not present.[1] (*Id.*) Natalie Eness appeared pro hac vice for ECMC and Barry Spitzer appeared for J.P. Morgan Chase. (*Id.*) As explained below, the court REMANDS the case to the bankruptcy court.

---

[1] The court advised Mr. Mees that he could not represent Nancy Mees and that she is required to appear individually.

1

1   I.     UNDISPUTED FACTUAL AND PROCEDURAL BACKGROUND

Initiated in the bankruptcy court, this adversary proceeding arises out of appellants' request to have their parent loans discharged.[2] (*See generally* ECF No. 14.) Appellants, husband and wife, are borrowers of parent loans. (ECF No. 14-4 at 3[3] ¶ 7 & at 4–5 ¶ 6.) ECMC is "a private, nonprofit corporation" that holds the title to the loans. (ECF No. 16 at 10 n.3.)

In or about 2006, appellants took out federally guaranteed parent loans to fund the education of one of their sons, William Mees ("William"), at the University of California ("UC"), Santa Cruz. (ECF No. 14-7 at 29.) William never graduated and works now in the retail industry. (ECF No. 14-4 at 3 ¶ 14.) Appellants' loan balance is about $35,000. (ECF No. 14-6 at 11.) Appellants have another son, a minor, who lives with them. (ECF No. 14-7 at 40–41.)

Appellants' education and employment history is varied. Mr. Mees, now 60 years old, has a Bachelor of Arts and History degree from UC Santa Cruz and a law degree from the University of the Pacific, McGeorge School of Law. (*Id.* at 9.) He passed the California State Bar examination and began working as a bankruptcy attorney in 1981. (*Id.* at 9–10.) In or about 1993, Mr. Mees pled guilty to a felony and was incarcerated (*id.* at 10), as a result of which he became ineligible to practice law. (*Id.* at 13.) Subsequently, Mr. Mees held various positions in the business consulting sector, with his last employment ending in 2005. (*Id.* at 10.) Because Mr. Mees was unable to find other employment after 2005, he became an "independent contractor," doing business consulting work for various businesses. (*Id.* at 12–13.) Mr. Mees has been unemployed for over 3 years. (*Id.* at 10.)

Ms. Mees, now 58 years old, is highly educated as well. She has a Bachelor of Science from UC Davis and a law degree from McGeorge School of Law. (ECF No. 14-7 at 34.) Ms. Mees passed the California State Bar examination in 1981, but voluntarily became inactive shortly thereafter. (*Id.* at 35.) Besides clerking at the California Court of Appeal for the Third

---

[2] The adversary proceeding number before the bankruptcy court is: 11-02795. The related bankruptcy case number is: 11-42862. The case number before the BAP is: 13-1401.

[3] The court will refer to the page numbers provided by the electronic case file ("ECF") system.

1  District and assisting her husband with rudimentary bookkeeping responsibilities, the record is
2  unclear what other employment positions Ms. Mees has held. (*Id.* at 35–37.) "[M]ost of the time
3  [she] was a homemaker . . . ." (*Id.* at 36.) Ms. Mees has been unemployed for about 30 years.
4  (*Id.* at 35–36.)

5  On September 22, 2011, appellants filed for Chapter 7 relief, representing
6  themselves, and on December 30, 2011, appellants commenced an adversary proceeding to have
7  the loans discharged. (*See* Bankruptcy Case No. 11-42862.) The bankruptcy court issued its
8  ruling orally and entered a judgment in favor of ECMC on June 20, 2013. (ECF No. 14-2 at 4.)
9  Subsequently, appellants filed motions for reconsideration and a new trial, which the bankruptcy
10 court denied. (*See* Adversary Proceeding Case No. 11-01795.)

11 Appellants appealed those decisions to the United States Bankruptcy Appellate
12 Panel ("BAP") for the Ninth Circuit, but because ECMC objected to BAP jurisdiction, the case
13 was transferred to this court. (*See* BAP Case No. 13-1401.) Accordingly, appellants' appeal is
14 now before this court. (ECF No. 14.) ECMC has responded (ECF No. 16), and appellants have
15 replied (ECF No. 20).

16 II.     JURISDICTION

17 District courts have jurisdiction to hear appeals "from final judgments, orders, and
18 decrees . . . of bankruptcy judges . . . ." 28 U.S.C. § 158(a). However, such appeals "shall be
19 heard by a 3-judge panel of the bankruptcy appellate panel" unless "any other party elects . . . to
20 have such appeal heard by the district court." *Id.* § 158(c)(1)(B). This court has jurisdiction to
21 hear this case because the case is an appeal from the bankruptcy court's judgment and ECMC has
22 elected to have it heard in this court in accordance with § 158(c)(1)(B).

23 III.    ISSUES ON APPEAL

24 The issues on this appeal are as follows:

25 1.  Did the bankruptcy court commit a legal error when it applied the test
26     articulated in *Brunner v. New York State Higher Education Services*
27     *Corporation*, 831 F.2d 395 (2d Cir. 1987), in determining whether appellants'
28     loans should be discharged?

3

2. Was the bankruptcy judge's finding that appellants did not meet the second prong of the *Brunner* test clearly erroneous?

3. Did the bankruptcy court err when it denied appellants' motions for reconsideration and a new trial?

IV. STANDARDS OF REVIEW

On appeal, a district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." FED. R. BANKR. P. 8013. A district court reviews a bankruptcy court's factual findings "'under the clearly erroneous standard and its conclusions of law *de novo*.'" *Acequia, Inc. v. Clinton* (*In re Acequia, Inc.*), 787 F.2d 1352, 1357 (9th Cir. 1986) (quoting *Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir. 1986)). "Mixed questions of law and fact are reviewed *de novo*." *Beaupied v. Chang (In re Chang)*, 163 F.3d 1138, 1140 (9th Cir. 1998). Whether a debt is dischargeable presents mixed issues of law and fact reviewed *de novo*. *Miller v. United States*, 363 F.3d 999, 1004 (9th Cir. 2004).

"[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *see also Savage v. Greene (In re Greene)*, 583 F.3d 614, 618 (9th Cir. 2009). "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Anderson*, 470 U.S. at 573. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574.

Finally, the bankruptcy court's denial of a motion for reconsideration and a motion for a new trial is reviewed for an abuse of discretion. *See Arrow Elecs., Inc. v. Justus (In Re Kaypro)*, 218 F.3d 1070, 1073 (9th Cir. 2000); *Jess v. Carey (In re Jess)*, 169 F.3d 1204, 1209 (9th Cir. 1999).

/////

/////

V.     DISCUSSION

As noted above, appellants make three principal arguments. First, appellants argue that the *Brunner* test is inapplicable to parent borrowers; instead, they urge the court to adopt a new test that would consider "the totality of circumstances." (ECF No. 20 at 4–7, 11.) Second, in the alternative, appellants argue their situation satisfies the second prong of the *Brunner* test. (*Id.* at 7–10.) Finally, at hearing, Mr. Mees clarified that appellants also challenge the bankruptcy court's denial of their motions for reconsideration and a new trial. (*Accord id.* at 3.)

The court addresses each issue in turn.

A.  Did the bankruptcy court commit an error when it applied the *Brunner* test in determining whether appellants' loans should be discharged?

Appellants argue that because "the Ninth Circuit has not ruled on the application of the *Brunner* test to parent Direct PLUS loans[,]" and because "the underlying policy considerations" behind the *Brunner* test do not apply to parent borrowers, the *Brunner* test should not be applied." (ECF 14 at 10–11.) ECMC responds that parents, like student borrowers, are subject to the same standard for determining dischargeability of educational loans. (ECF 16 at 22–23 (citing *United Student Aid Funds v. Pena (In re Pena)*, 155 F.3d 1108 (9th Cir. 1998)).)

Government guaranteed educational loans are not dischargeable in bankruptcy cases "unless excepting such debt from discharge . . . would impose an undue hardship . . . ." 11 U.S.C. § 523(a)(8).[4] While the phrase "undue hardship" is not defined in the Bankruptcy Code, the Ninth Circuit has recognized that "[t]he existence of the adjective 'undue' indicates that Congress viewed garden-variety hardship as insufficient excuse for a discharge of student loans . . . ." *In re Pena*, 155 F.3d at 1111. To determine whether excepting a student loan from a discharge would create an undue hardship on a debtor, the Ninth Circuit in *Pena* adopted the three-part test articulated in *Brunner*. *See id.* "First, the debtor must establish that she cannot maintain, based on current income and expenses, a minimal standard of living for herself and her dependents if forced to repay the loans." *Id.* (internal quotation marks omitted). "Second, the

---

[4] Unless the court indicates otherwise, all section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

5

1  debtor must show that additional circumstances exist indicating that this state of affairs is likely to
2  persist for a significant portion of the repayment period of the student loans." *Id.* (internal
3  quotation marks omitted). This prong promotes "the clear congressional intent . . . to make the
4  discharge of student loans more difficult than that of other nonexcepted debt." *Id.* (internal
5  citation and quotation marks omitted). The third prong requires showing the debtor's good faith
6  efforts to repay the loans. *Id.* Under this test, the burden is on the debtor to prove all three
7  elements. *Rifino v. United States* (*In re Rifino*), 245 F.3d 1083, 1087–88 (9th Cir. 2001).

8  Here, appellants argue that the *Brunner* test should not be applied to their situation
9  because they are the parents of a student on whose behalf they took out the loan; they did not
10 themselves receive the education for which the loan was taken out. (*See* ECF No. 20 at 4–7.)
11 Consequently, they argue, the reasoning behind the *Brunner* test is inapplicable when parents will
12 not be able to use the education for which the loans were taken out to increase their own earning
13 capacities. (*See id.*)

14 Here, the court assumes without deciding that the *Brunner* test applies to parent
15 borrowers, and remands the case to the bankruptcy court on other grounds.

16  B. Did the bankruptcy court err when it found appellants did not
17     satisfy the second prong of the *Brunner* test?

18 Appellants argue that even if the court concludes the *Brunner* test applies,
19 appellants can satisfy the second prong; namely, appellants can show that additional
20 circumstances exist showing their extended inability to pay. (ECF No. 14 at 11–13.)
21 Specifically, appellants argue that the bankruptcy court made an error when it held that if both
22 appellants "get a limited job . . . [appellants] would be able to reach a point where [they] could
23 have a sustainable income." (*Id.* at 13 (internal quotation marks omitted).)

24 ECMC responds that the bankruptcy court's determination that appellants "were
25 capable of more" and had the ability to correct "their financial condition given their high-level
26 education, good health, and obvious intelligence" was not erroneous. (ECF No. 16 at 26–32.)

27 As an initial matter, at hearing the parties disputed whether the bankruptcy court
28 had affirmatively decided the first prong of the *Brunner* test. (*Accord* ECF No. 14 at 5; ECF No.

6

1   16 at 26.)  And it is not surprising why.  With respect to the first prong, the bankruptcy court

2   stated: "The first prong that you are unable to have a normal standard of living, I seem to think

3   that you probably have gone a long way in showing that. I don't think you live extravagantly,

4   hardly, so you are living under very strained financial circumstances it seems to me."  (ECF

5   No. 14-7 at 64.)  But then, the bankruptcy court also stated: "First prong is the minimal standard

6   of living. I don't really want to get into that. I think there is arguments [sic] both ways on that, but

7   basically it seems that the debtors are making an effort to live under their rather restrained

8   financial condition."  (*Id.*)  The bankruptcy court went on: "The real area that I am concerned

9   with in this case is the second prong."  (*Id.*)  As evident from the transcript, it is unclear whether

10  or not the bankruptcy court made an affirmative ruling on the first prong.  Because it is necessary

11  to decide the first prong before analyzing the second prong of the *Brunner* test, on remand, the

12  bankruptcy court should clarify its decision with respect to the first prong.

13          The bankruptcy court should also provide further clarification on the second

14  prong.  As noted, the second prong of the *Brunner* test requires the debtor to prove that "her

15  present inability to pay will likely persist throughout a substantial portion of the loan's repayment

16  period." *Educational Credit Management Corporation v. Nys (In re Nys)*, 446 F.3d 938, 945 (9th

17  Cir. 2006).  This inquiry focuses on the debtor's financial situation.  *See id.*  "[T]he determinative

18  question is whether the debtor's inability to pay will, given all we know about the salient features

19  of her existence, persist throughout a substantial portion of the loan's repayment period." *Id.* at

20  946.  Under this standard, the debtor cannot purposely choose to live a lifestyle that prevents her

21  from repaying her student loans.  Thus, the debtor cannot have a reasonable opportunity to

22  improve her financial situation, yet choose not to do so." *Id.*  But, "[a]t the same time, [courts]

23  cannot fault the debtor for having made reasonable choices that now inhibit her ability to

24  substantially increase her income in the future." *Id.*  Courts "will presume that the debtor's

25  income will increase to a point where she can make payments and maintain a minimal standard of

26  living; however, the debtor may rebut that presumption with 'additional circumstances' indicating

27  that her income cannot reasonably be expected to increase and that her inability to make

28  /////

payments will likely persist throughout a substantial portion of the loan's repayment period." *Id.* Yet, those additional circumstances need not be "exceptional." *Id.*

In analyzing the second prong of the *Brunner* test, courts may consider the following list of non-exhaustive factors:

> [(1)] Serious mental or physical disability of the debtor or the debtor's dependents which prevents employment or advancement; [(2)] The debtor's obligations to care for dependents; [(3)] Lack of, or severely limited education; [(4)] Poor quality of education; [(5)] Lack of usable or marketable job skills; [(6)] Underemployment; [(7)] Maximized income potential in the chosen educational field, and no other more lucrative job skills; [(8)] Limited number of years remaining in [the debtor's] work life to allow payment of the loan; [(9)] Age or other factors that prevent retraining or relocation as a means for payment of the loan; [(10)] Lack of assets, whether or not exempt, which could be used to pay the loan; [(11)] Potentially increasing expenses that outweigh any potential appreciation in the value of the debtor's assets and/or likely increases in the debtor's income; [(12)] Lack of better financial options elsewhere.

*Id.* at 947 (citation and footnotes omitted; alteration in original).

In the present case, in considering relevant factors, the bankruptcy court addressed factors 1 through 5, 8 through 10, and 12, finding that appellants did not suffer from a serious mental or physical disability (ECF No. 14-7 at 65); appellants did not have any dependents (*see id.*); appellants were both well-educated, and the quality of their education was not poor (*see id.* at 66); appellants did not work in their profession for many years; a number of years remained in the appellants' work life (*id.* at 66); nothing prevented appellants' relocation for work (*see id.* at 66–67); appellants did not have any assets (*id.* at 67); and appellants "could reach a point where [they] could have a sustainable income" (*id.*).

However, the bankruptcy court clearly erred in not taking into account appellants' minor son in determining the second factor, whether appellants had any obligation to dependents. (*See* ECF No. 14-7 at 40–41.) On remand, the bankruptcy court should consider this factor. (*See* ECF Nos. 24 & 25.) In addition, on remand, the bankruptcy court should also clarify its findings regarding factors five, six, seven, eight, and eleven; factor six, although relevant, is not discussed at all and the findings as to factors seven, eight and eleven are unclear. This court seeks those clarifications in light of the bankruptcy court's role as the fact-finder.

8

Accordingly, the court REMANDS the case to the bankruptcy court. In remanding the case, this court expresses no opinion as to whether appellants are entitled to a complete or partial discharge, *see In re Nys*, 446 F.3d at 947, n.8 (holding "on remand, the bankruptcy court should consider whether [the debtor] is entitled to . . . a partial discharge"), or whether appellants' motions for reconsideration and a new trial should be granted.

        C.      Did the bankruptcy court err in denying appellants' motions for reconsideration and a new trial?

The court need not address whether the bankruptcy court erred in denying appellants' motions for reconsideration and a new trial because the court remands the case to the bankruptcy court on other grounds, as explained above. On remand, the bankruptcy court may wish to clarify whether it considered the two letters dated June 21, 2014 that appellants received, showing appellants' entitlement to public benefits. (*See* ECF No. 14-1 at 20–21 & 46–47.)

VI.    <u>CONCLUSION</u>

The case is REMANDED to the bankruptcy court.

IT IS SO ORDERED.

DATED: July 22, 2014.

_____
UNITED STATES DISTRICT JUDGE

9